[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
AMENDED MEMORANDUM OF DECISION
This action, by writ and complaint, claiming a dissolution of the marriage of the parties and other relief, as on file, came to this court on January 23, 1995, with a return date of February 21, 1995, and thence to later dates when the defendant appeared and filed a cross complaint. Both parties appeared for a limited contested trial which was heard on October 4, October 24, and November 21, 1996.
The court, having heard the evidence, finds the following:
The wife, Louise A. Giddish, whose maiden name was Louise A. Santosuosso, was lawfully married to the husband, Timothy G. Giddish, on March 4, 1978 in Plymouth, Connecticut.
At least one party has resided continuously in this state twelve months next before the date of the filing of the complaint and all statutory stays have expired.
The marriage of the parties has broken down irretrievably.
There are no minor children issue of the marriage and no minor children have been born to the wife since the date of the marriage.
The wife is 56 years old. For a number of years, she worked at Bristol Hospital as a clerk in the mail and records rooms, but was laid off in 1992. She receives a small pension of $155.00 per month and has held employment as a sales clerk at various places since 1992. Presently, she is employed as a sales clerk at the Fashion Bug in Bristol, where she nets a weekly wage of $132.01. Her earning capacity is not likely to increase in the future.
The husband is 52 years old and has been unemployed by choice since 1993. He is c master auto mechanic, with an expertise in restoring classic or vintage automobiles. He claims he earns an average of $75.00 per week repairing and restoring vehicles in his home garage. Apart from paying the loan on the CT Page 6785 couple s motor home and other vehicular expenses, the husband states all his other expenses are paid by his daughter. I do not find the husband's statements as to his income credible. Several friends of the couple testified the husband would brag about never needing to work for someone else again because he made so much money working for himself. The husband once told his friend, Daniel Lozier, that he could make several thousand dollars in a week. When questioned as to just how many cars he worked on in the past several years and how much he was paid for the work, the husband's responses were inexplicably vague. Although he admitted to working on cars for many individuals, he could not recall what anyone paid him, and admits he often accepted payment in cash. The husband s earning capacity is far above what he claims as income on his financial affidavit.
After the marriage in March of 1978, the parties purchased a house at 12 Sandra Avenue in Plymouth, Connecticut. They obtained a mortgage for approximately $32,000.00 and paid $41,000.00 for the home. Money from a joint savings account was used for a down payment of approximately $10,000.00. The plaintiff submitted an appraisal dated July, 1996, which states the home has a fair market value of $115,000.00. The husband did not submit an appraisal.
Although the husband was penurious, domineering and insensitive, the marriage was a fairly happy one until 1994. This couple shared an interest in old cars, and did a lot of traveling with mutual friends. In May or June of 1994, the husband told his friend, Lozier, that a 29-year-old neighbor had made sexual advances toward him and that he could have anything he wanted. This woman divorced her husband in the fall of 1995 and is now the husband's girlfriend.
In the fall of 1994, the husband asked the wife to go for a ride and told her he didn't love her any more. He suggested that the wife move out, and told her he would but her half of the marital home. On October 31, 1994, the wife moved out of the marital home into a small apartment. She withdrew $9,000.00 from her IRA and $1,900.00 from a savings account. She wrote the husband a check for $1,000.00. She tried moving to Florida, but returned in the spring of 1995, suffering from depression. She is now residing in a tiny apartment in the basement of a friend's home. The couple s grown daughter and her family have moved into the marital home with the husband. Not long after the wife moved out, the parties and their daughter orally agreed on a plan to CT Page 6786 buy out the wife s interest, and the wife executed a quit claim deed, never receiving any mortgage back or other security. The wife was paid $10,000.00 and another $6,250.00 in monthly allotments, which the wife stopped accepting after negotiations for a marital settlement broke down. All of this money was paid by the couple's daughter, not the husband. Although the wife signed a quit claim deed, it has never been recorded and cannot be located. The marital home is still jointly owned.
While it is not clear when any sexual relationship between the husband and his girlfriend commenced, he was certainly motivated to end his marriage as a result of his interest in her. With regard to fault leading to the breakdown of the marriage, I find the husband was primarily at fault.
The husband asserts that a proposed stipulation signed by the parties in April of 1995 should be enforced by this court and incorporated into the judgment. This agreement afforded the wife little financial security in light of her contributions to this 18 year marriage, and constituted an unfair and incomplete division of the marital assets. The written stipulation signed by the parties in April of 1995 was never approved by the court, and I find it unfair and inequitable.
With regard to the division of property and the wife's request for periodic alimony in this case, the court has considered case law, the testimony of the witnesses, the exhibits, the financial affidavits of the parties, and their pretrial memoranda. In addition, the court has taken into consideration all of the criteria set forth in General Statutes § 46b-81 as to the division of marital assets, § 46b-82
as to awarding alimony, and § 46b-62 as to awarding counsel fees.
Accordingly, the court enters the following orders:
1. A decree of the dissolution of the parties marriage shall enter on the grounds of irretrievable breakdown of the marriage.
2. Neither party shall pay alimony to the other.
3. The wife shall retain, free and clear of any claim of the husband, her sole interest in her pension benefits from her former employment at Bristol Hospital. CT Page 6787
4. All the husband's right, title and interest in the marital premises at 12 Sandra Avenue in Plymouth, Connecticut, is hereby assigned to the wife, subject to any encumbrances, including, but not limited to, the first mortgage in the approximate amount of $25,000.00 and taxes or sewer charges owed to the town of Plymouth, which the wife shall assume and pay, holding the husband harmless therefrom. On or before January 31, 1997, the husband shall vacate the marital premises, taking with him only the personal property to which he is entitled pursuant to paragraphs 8 and 11 below.
5. The wife shall be responsible for the liabilities listed on her financial affidavit, with the exception of the debt owed on a Capital One credit card in the amount of $3,240.00, and she shall indemnify and hold the husband harmless from any claim or demand on the debts she is ordered to pay.
6. The husband shall be responsible for the liabilities listed on his financial affidavit, except the taxes and sewer charges owed to the Town of Plymouth, which the wife shall assume and pay pursuant to paragraph 4 above. The husband shall indemnify and hold the wife harmless from any claim or demand on the debts he is ordered to pay.
7. The 1982 Chevette motor vehicle shall remain the exclusive property of the wife, and she shall be responsible for the car insurance, tax, registration, repairs and all other expenses for said vehicle. The husband shall transfer all his right, title and interest, if any, in this vehicle to the plaintiff wife within 30 days of the date of this judgment.
8. The 1965 Chevrolet Impala, the 1988 Allegra motor home, the 1964 Honda motorcyle, and the 1985 Le Baron limousine shall remain the exclusive property of the husband, and he shall be responsible for the motor home loan, car insurance, tax, registration, repairs and all other expenses for said vehicles. The husband is also responsible for the cost of removing any vehicles awarded to him from the marital premises. The wife shall transfer all her right, title and interest, if any, in these vehicles to the husband within 30 days of the date of this judgment.
9. The Bristol Savings Account in the amount of $85.00 as shown on the husband's financial affidavit shall be his, free of any claim or demand by the wife. CT Page 6788
10. The Fleet Bank Checking Account in the amount of $300.00 shown on the wife's financial affidavit shall be hers, free of any claim or demand by the husband.
11. All other tangible personal property now in the possession of the wife and all lawn, garden or snow removal equipment, household appliances and furniture in the marital home acquired by her before the marriage or by either party during the marriage shall be wholly the wife's, free of any claim or demand by the husband. Other than the items listed in the preceding sentence, all other tangible personal property now in the possession of the husband, including but not limited to his automotive repair tools and equipment, shall be wholly his, free of any claim or demand by the wife.
12. Each party shall pay his or her own attorney's fees.
13. The wife's premarriage name of Louise A. Santosuosso, is hereby restored.
Judgment shall enter in accordance with the foregoing.
KELLER, J.